The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention for the Court is now sitting. God save the United States and this Honorable Court. All right, thank you. You can be seated. All right, Mr. Patel, whenever you're ready, welcome back. Good morning, Your Honors. May it please the Court. In this case, at issue is whether Mr. Alfaro's prior conviction for a Maryland third degree sex offense qualifies, whether it qualifies as a generic forcible sex offense. Now, for purposes of section 2L1.2 sentencing guidelines. Now, there's no dispute here that the prior offense is forcible. The only issue here is whether or not it qualifies as a generic sex offense under 2L1.2. And, Your Honors, it does not. Because the specific subsection of the Maryland third degree statute of which Mr. Alfaro was convicted can be violated by an unwanted touching. For example, by touching somebody's butt on the outer clothing while being aided and abetted by another without an intent to gratify one's sexual urges. An intent that's required in order for the offense to qualify as a generic sex offense. And first, Your Honors, I will discuss the generic sex offense definition and why that requires an intent to sexually gratify. And then second, my plan is to discuss the Maryland statute and why the Maryland statute here does not have that requirement and therefore doesn't qualify as a generic sex offense. Your Honor, starting with the generic sex offense definition, there are three relevant cases here. And I'll start with the first one, United States v. Diaz-Ibarra. In that case, at issue was whether a Georgia molestation statute qualified as a sexual abuse of a minor. Even though the term sexual was being defined there, Your Honor, that's very similar to sex. You think that case wins this argument for you? Yes, Your Honor. That case and also Cabrera-Umanzur that came after Diaz-Ibarra makes it even more clear. In Diaz-Ibarra, the court specifically said we are defining what the word sexual means. And then specifically said that means an intent to sexually gratify and then repeated it. Wouldn't abuse be a purpose associated with sexual gratification? No, Your Honor, because in the Maryland statute, the Maryland case law makes very clear that sexual gratification and abuse are two different things because the abuse can be for a purpose that has nothing to do with sexual gratification. For example, the abuse could be for emotional injury, mental injury, to harass somebody, to humiliate someone. It does not have to be for the purpose of sexual gratification. But if we accepted that argument, a lot of rape statutes around the country wouldn't count. Well, Your Honor, that's not accurate actually because a lot of those rape statutes are going to have an element of violent force. And so they're going to qualify for that. Remember here, we're talking about a statute that only requires an unwanted touching. For example, patting somebody on the butt on top of the outer clothing. So even if there is not a sexual gratification element, there will be many statutes, as long as they have an element of violent force, they're going to qualify under the force clause. Your Honors, this court has made very clear that under the force clause, there has to be an element of violent force, meaning strong physical force. Here, the offense also does not qualify under that clause because it's very clear here, based on Bible v. State, the Maryland Court of Appeals decision, that this statute can be violated by simply a second touching on the butt on the top of the outer clothing. So as far as the force clause, for this case, it does not qualify under the force clause. And then also, my argument here is that it also doesn't qualify as a forcible sex offense because it's not a generic sex offense. So, Your Honor, returning to the generic... Let me just see if I understand where we are. Yes, Your Honor. In your argument in this case. Here, your client had been convicted of a third-degree sexual offense in Maryland. Yes. And he had to register, therefore, as a sex offender. Yes, Your Honor. And in this case, he pled guilty to a charge of not registering under the Federal Sexual Offender Registration Act. Yes, Your Honor. So we have a person who's guilty of a sexual offense who has to register as a sex offender. The crime that he pled guilty to, and I think it was pled in this case, included not registering as a sex offender. But your argument is he can't be enhanced for a forcible sex offense. Yes, Your Honor. That doesn't, on the face of it, that doesn't seem to make much sense, does it? Your Honor... I'm asking you, on the face of it as we talk, that doesn't seem to make much sense, does it? Your Honor... You have to answer my question first. On the face of it, it may not. I totally agree. What you argue, that's just you argue under the Fourth Circuit law and the state of the law. Yes, Your Honor. The categorical approach. Yes, Your Honor. It gets us to a result. A result that you say we need to get to, but a result to maybe a lot of people which seem kind of silly. Your Honor, I totally agree that common sense is out of the question in these cases. I think I totally agree with you there. But, you know, we look at Cabrera-Umanzar there. The offense at issue was child sexual abuse of a minor. That was the name of the offense that the defendant was convicted of. And yet we held that it did not have an element of sexual gratification. Or you held, I'm sorry, Judge Traxler's decision. I can't hold anything. I was going to say, well... Maybe someday. But Judge Traxler in that case, you know, found that it didn't have an element of sexual gratification. And, therefore, it couldn't qualify as a sexual abuse of a minor. Do you think the categorical approach makes much sense when the key word for sentencing now is individualized sentencing? Do you think the categorical approach makes much sense? Your Honor, I do think it makes sense. Yes, I do think it makes... Why so? The reason I think it makes sense is because... Why don't we look at what an individual did in a case? Instead of he could have done X, he could have done Y. In this case, he did X. We can all agree he did X. Is that conduct forcible sexual conduct? What's wrong with that approach? I mean, other than I know we may be bound by categorical, but I'm asking you. Yes. This is a matter of law. Yes. In a day of individualized sentencing, why in the world do we act like we're blind, deaf, and dumb as to what a person actually did? Well, Your Honor, that is something that could be considered as a purpose for variance purposes under 3553A. But I know I'm talking about on not following... Right. I'm just talking about the philosophy and value of the categorical approach. In a day of individualized sentencing, because under sentencing, as you know, if you don't consider everything about the individual when you sentence, past conduct, socioeconomic factors, education, everything you can think of, and I'm sure you've argued many times, and then we come to this and we go, but we just use the categorical approach. I thought the rationale was to save the court time so you don't have to have sort of many trials on what happened. That's one of the rationales. But we spend time doing just this. I thought you all agreed that this was a modified categorical approach. We do. We do. So there's no dispute here as to which subsection the defendant was convicted of. But still, I think I agree with Judge Shedd, that you have to look at it. It's still an elements-based approach. Even when you're in the modified categorical approach, the court can only look to the Shepard documents to determine which of the elements the defendant was convicted of. So here we know that he was convicted of 3307A, and then you have to look at the most innocent conduct within that subsection. So the most innocent conduct would require an unintentional touching of an intimate area while being aided and abetted by another for a purpose that either is for sexual gratification or abuse. And so that's the most innocent conduct, and that's what we're looking at. And I don't think there's any dispute about that here. So as far as the modified categorical approach, categorical approach, that's not really an issue here. I mean, the issue is what does sex offense mean? Why don't we look at the fact that he had to register as a sex offender? Why can't we use that? Because, Your Honor, that's not a part of the—that's not in the Shepard documents. We're looking at his conviction. I know that, but the Shepard documents, that was a case where you didn't have something else that somebody had absolutely agreed to. Those Shepard documents, type documents, are either something that he agreed to or something that's really clear, no dispute about it. But why wouldn't a sex offender registration, why wouldn't that be something? That's it. Nobody—he doesn't say it's not so. He absolutely agrees with it. Why couldn't that be a document to look at in the modified approach? Well, first of all— It falls outside of what people generally think about, but I'm asking under the rationale that they set that group of documents to be looked at, why couldn't sex offender registry be one? Because, Your Honor, you can only look at the offense of which the defendant was convicted here, you know, and the charge that we're looking at is third-degree sexual offense. So for purposes of determining whether or not that qualifies as a crime of violence, you can only look at the Shepard documents that are relevant to that conviction. Why couldn't the sex registry be another document we look at to decide what he did? Well, I'm just asking you, why doesn't the rationale for the Shepard documents— I'm not looking at the caveat that there's a limited group of documents you can look at. Why isn't the sex registry that he agrees he has to be part of—he agrees to that. He agreed to it, didn't he? Under his— Yes. It's all part of his initial conviction. Why wouldn't that be the same type of document that would shed light on what he did, just like the Shepard documents would? Well, Your Honor, if that was an issue here, if we were looking at whether that failure to register qualified as a crime of violence, as a forcible sex offense, then I do believe— No, no, no, not a failure to register. The fact that he did have to register. Right. Earlier, earlier. Because this offense is based on the fact that he didn't register like he had to do. So the fact that he had to register is established. There's no dispute about that. So why doesn't that carry some weight on the Shepard-type documents? I'm just asking, why doesn't it? Because, Your Honor, even if we could look at that document, I don't think it reveals anything here because we're trying to determine. At most, it may reveal, like, what the underlying offense was that he was convicted of. You think it still just bootstraps back to— Yeah. I mean, so we're back to, does the third-degree sexual offense qualify? And it doesn't. And so that document doesn't have any value here. And then there's no dispute that failure to register itself is not a sex offense. The government's not even arguing that here. Oh, no. No, this is about, this is not an element of this crime. Right. This is an enhancement for this crime based in part on what he did earlier, based on what he did. What he was convicted of, yes. But, again, like I said, Your Honor, that goes back to Maryland third-degree sex offense. And, you know, for the reasons that I've stated, it simply does not satisfy the sexual generic— Yes. If your client, back to the Maryland underlying facts— Yes. If it was a work situation and he would go to any woman in the workplace and did what he did in the case, wouldn't that—would there be anybody in the world who would say that wasn't sexual harassment? Would anybody in the world say that? Your Honor, under my definition, like if I— Under anybody's definition. Your Honor, maybe. You go up to anybody on the street and, yes, they probably would say, of course that's, you know, sexual harassment. But that's not what we're operating under. We have to look at a law enforcement law. To me, it seems the lack of appropriateness of the—and, by the way, the categorical approach, it's written in the law, but it's not written into stone. And it just strikes me—and we have an audience here, so I don't want to say too much— Yes. But for a man to go to a woman in any setting and use his hands on her body the way this man did, isn't nobody—people would laugh if they knew the courts were saying that that conduct is not— and the analysis we used to get there, that conduct isn't sexual. That's not sexual. I mean, I think people would laugh at the law, don't you? Your Honor, I agree with you that it's horrendous—if that is, in fact, what happened, that is horrendous conduct. And I also agree with you— That's not in the dispute. That's what happened, isn't it? Well, we're looking at what he was convicted of. No, no, I'm saying factually. It's not in the dispute that he used his hands on that woman. Not in the dispute about that, is it? Well, Your Honor, he was convicted—all we know is what he was convicted of. He was convicted of a third degree— Were those facts disputed? I believe they were disputed. That he used his hands on, I guess, his wife or his ex-wife. Yeah, I believe that that was disputed at trial. And then there were a lot of offenses, actually, that he was charged with. He was charged with an attempted rape. He was charged with a first degree assault. He was acquitted of those. And the only two offenses of which he was convicted was the third degree sex offense and violating an ex parte order. So it did go to trial on much more serious charges, but that's what he was convicted of. Pretty serious charges. Can you think of any logical or policy reason why an offense committed for abuse should be treated differently than one committed for gratification with respect to the sentencing enhancement? Well, Your Honor, that is the law. We have already done that in Cabrera-Umanzur by saying that there has to be an element of sexual gratification. But there is a policy reason, Your Honor, because I think when somebody is doing a crime or committing a crime for purposes of inflicting sexual injury on somebody for sexual gratification, that I think society recognizes is more egregious, that there's an ick factor to that. So I think that's the policy reason. I don't know about that. Listen. Wait a minute now. You think society would find it worse if a man digitally penetrated a woman for sexual gratification than if he just did it for any other reason? You think that? I think society would find all of it should be punished the same. And I don't think they would count what happened to that woman any different, whether or not he did it for sexual purposes or did it for domination purposes or any other purpose, perversion purposes, any other purpose you could think of. I don't think society would say it's much worse or any worse if he did it because he had some sexual component. You think that? Your Honor, I think it's all horrendous. But I think the sexual— Yes. You think society would see it worse if there was a sexual component. I understood you to say that. Yes. Yes, Your Honor. I do think that it makes it a little bit worse than if that wasn't—it's all horrendous. I totally agree with you, but I just think it makes it a little bit more. Thank you very much. Thank you, Your Honor. Mr. Pierce. Mr. Chief Judge, and may it please the Court, James Pierce for the United States. Mr. Alfaro pled guilty to a legal reentry and, as Judge Shedd noted, failure to register as a sex offender. And he now argues that he is a sex offender that did not commit a sex offense. The District Court rejected that argument, and so should this Court. And, Judge Shedd, the categorical approach here doesn't—it doesn't at times work against common sense, but it need not in this case. The Court in Chacon said that forcible sex offense—and we agree here that the offense in question was forcible, so the question is sex offense—is subject to the ordinary contemporary meaning. And that meaning, in our view, captures the full range of conduct that's criminalized in the Maryland third-degree sex offense. Now, Judge Shedd, you asked some questions about how could the fact of his agreeing his—having pled guilty as a sex offender, how could that be relevant? I agree that it wouldn't fall in the category of Shepard documents, but it is relevant when this Court considers the ordinary contemporary meaning of a sex offense. To register as a sex offender— He pled guilty to the sex offense. Wasn't he convicted of the sex offense? He was convicted of the sex offense under Maryland law. He pled guilty under Federal law to— You said sex offense. I thought you meant—I called that the SORNA registration offense. And I can refer to that to make it clear. He pled guilty to the SORNA registration offense, by which he acknowledged, I am a sex offender who has a duty to register. Now, SORNA itself provides a definition for what a sex offense is. Most broadly, it says a defendant convicted of a sex offense, which isn't particularly helpful. But it also says a criminal offense that involves elements of a sexual act or sexual conduct. And then Federal law also provides definitions of those terms, sexual act and sexual— Sorry, I said conduct—contact. Both of those terms—and this is in 18 U.S.C. 2246— both of those include basically the kind of intentional touching, which is certainly what happened in this case, and which is criminalized under Maryland third-degree sexual offense, for all sorts of purposes, including gratification, including arousal, but also including abuse, humiliation, degradation. And that gets to Judge Floyd. Your question, is there a policy or logical reason why a sex offense with the purpose of abuse should be excluded from the general definition of sex offense? The answer is no. And that's what Federal law says. And that's not what this Court has said in Diaz-Ibarra or Cabrera-Umanzor. Those cases involved the interpretation of sexual abuse of a minor. And it's clear that in both of those cases the Court, in passing, offered definitions of the word sexual. And the definition, I believe, first from the Diaz-Ibarra case was the sphere of behavior associated with libidinal gratification. For one thing, that definition talks about the behavior associated with libidinal gratification. It doesn't say equals gratification. It talks about the individual's behavior. In our view, that encompasses not only— You don't think that's the be-all and end-all description or definition of sexual conduct in this circuit, then? Absolutely not. And think about it for this reason. The term being construed in Diaz-Ibarra and Cabrera-Umanzor was sexual abuse of a minor. The word abuse is part of that phrase. It would make sense, even in the passing definitions, that the Court wouldn't consider whether the sexual conduct had some sort of abusive purpose because the word abuse was in the very term being construed. It included sexual abuse of a minor. In that passing definition, the Court wouldn't necessarily have decided, oh, we have to—sexual could include an abusive purpose. And again, federal law itself, under 2246, acknowledges those purposes. Now, in terms of Maryland law, it's, in fact, not entirely clear that Maryland law recognizes abuse only as— or at least the state's highest court. The Bible case that Mr. Patel has referenced a couple of times, it explicitly holds, by the way, that touching on the buttocks outside of the clothes is not sufficient to establish third-degree sex offense. And it also, when it's discussing the specific intent needed to convict under a third-degree sex offense, it says there are two elements that need to be established. Intentional touching, one, and then for the purpose of sexual arousal or sexual gratification. It lops off, for some reason—admittedly, I can't understand why, but it lops off the question of abuse there. And that's a case decided from the highest court of the state of Maryland, the Maryland Court of Appeals. So it's not actually—Mr. Alfaro's argument that abuse necessarily counts under Maryland law for a third-degree sex offense conviction is not borne out by Maryland law itself. But I want to make clear to the court, that's sort of our second alternative argument. The main argument here from the government is that abuse, an abuse of purpose, is satisfactory under the generic definition of a sex offense. And that follows not only from sort of the common-sense intuition, but also the federal definition, as well as the fact that, if you look at the history of the guideline amendments, sexual abuse of a minor—and this is in the Diaz-Ibarra case— at one point was seen as a subset of the larger forcible sex offense cases. And then it was taken out in 2003 because of concerns that there had to be forcible conduct to establish sexual abuse of a minor. But the point is, the larger definition of sexual—forcible sex offense, specifically sex offense—captures the kind of conduct, abusive, gratificatory, arousal that was criminalized here. Unless there are particular questions from the court, that's the primary argument from the government. I think we understand your argument. Thank you. Mr. Patel. Your Honor, I just wanted to make the state of the Maryland law clear. It is very clear, when you look at Lapin v. State and Dilsburs v. State, that they specifically head-on addressed whether the Maryland statute required an intent to sexually gratify and specifically said no, because it would render the word abuse in the Maryland sexual contact definition superfluous. They specifically addressed that definition and said that it can be committed by mental, emotional, or physical injury that has nothing to do with sexual gratification. Now, Bible came along. In Bible, the government was only arguing that the defendant had committed intent with sexual gratification. And therefore, in Bible, the court didn't even mention anything about abuse. So the court of appeals surely would have mentioned Lapin, which was just decided two weeks before Bible, if it was going to overturn Lapin and if it was going to go against the plain language of the Maryland statute, which says abuse or sexual gratification. And so it's clear that Bible did not do anything to undo the clear state of Maryland law that said it could be done for abuse and not sexual gratification. The other thing I wanted to make clear about Bible is that the other issue there was whether a touching on the butt satisfied the actus reus. And the court said, yes, it did. That's an intimate area, and you can touch somebody on the butt on top of the outer clothing, and that does satisfy it. So the government is wrong by just saying that they said it's not sufficient to touch somebody on the outer butt, and then that will suffice under Maryland law. And so, Jana, going back to the generic sex offense definition, too, this court has now repeatedly said it six times that the word sexual in diazabara means an intent to sexually gratify. Then in Cabrera-Umanza, the court said, we are finding that the sexual abuse of a minor in the Maryland law doesn't qualify here because it didn't have an intent to sexually gratify. In Perez-Perez after that, the court again said the definition of sexual means intent to gratify. So, Your Honor, you would be going against all of this law that's defined sexual, and there's no meaningful distinction between sexual and sex. In fact, the government itself in its dictionary definitions, it gives, it refers to them interchangeably. So, Your Honor, here we do have controlling fourth circuit law that we have to follow, whether there's a good policy reason for it or not, like Judge Shedd was concerned with. I mean, there may not be a good policy reason for it, but we've said it, or you have said it over and over and over that sexual means an intent to sexually gratify, and you would have to overturn that law, undo that law to not rule for Ms. D'Alfaro in this case. Thank you, Your Honor. Thank you, Mr. Patel. We'll come down and greet counsel and then go into the next case.
judges: William B. Traxler Jr., Dennis W. Shedd, Henry F. Floyd